UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMUDIN MOHAMMADI,<br><br>        Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE; DANIEL A. BRIGHTMAN; TODD LYONS; KRISTI NOEM; PAMELA BONDI; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOM ENFORCEMENT,<br><br>        Respondents. | Case No.: 3: 25-cv-3450-JES-BJW<br><br>**ORDER:**<br><br>**(1) REQUIRING BOND HEARING;** and<br><br>**(2) ORDERING SUPPLEMENTAL BRIEFING** |

  Before the Court is Petitioner Ramudin Mohammadi's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 5, 6.

### I.  BACKGROUND

  Petitioner, a citizen of Afghanistan, entered the United States on August 28, 2021, through the Operation Allies Welcome program ("OAW"), which was extended to Afghan refugees to provide them with an opportunity to apply for asylum. ECF No. 1 ¶ 39. Petitioner alleges that he was not placed into removal proceedings at that time, and was

paroled into the United States on the same day, through humanitarian parole under 8 U.S.C. § 1182(d)(5). *Id.* ¶¶ 39-40. He alleges that under his parole, he did not have to attend check-ins with Immigration and Customs Enforcement ("ICE") and was not subject to any further requirements. *Id.* ¶ 42. Petitioner alleges that he affirmatively applied for asylum on January 17, 2023, and his application is still waiting adjudication. *Id.* ¶ 43.

On November 28, 2025, Petitioner alleges that while he was attempting to take an Uber customer home on the Camp Pendleton base, he was apprehended by Military Police and subsequently turned over to ICE agents. *Id.* ¶¶ 45-46. At this time, he alleges that he was not given any warrant for his arrest, any written notice for the revocation of his parole, and not provided with any particularized reasoning that his parole was being terminated. *Id.* ¶¶ 46-47. He was then taken to Otay Mesa Detention Center and served with a Notice to Appear the following day. *Id.* ¶ 46.

Petitioner alleges three causes of action in his petition, alleging violations of the Due Process Clause and the Administrative Procedure Act ("APA"). *Id.* ¶¶ 52-72.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

//

## III. DISCUSSION

In Respondents' return to the petition, they raise several issues: (1) Petitioner's claim is jurisdictionally barred by 8 U.S.C. § 1252; (2) alternatively, if not barred, Petitioner must exhaust administrative remedies; and (3) Petitioner is lawfully detained under § 1225. ECF No. 5.

### A. Jurisdiction and Administrative Exhaustion

The arguments with regards to jurisdiction and administrative exhaustion are identical to those recently addressed by the undersigned in *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). The Court adopts it reasoning as to these issues and incorporates it by reference. *See also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same).

Accordingly, the Court finds that the jurisdiction stripping provisions of 8 U.S.C. § 1252 do not strip it of jurisdiction to hear Petitioner's claims and that any further administrative exhaustion requirements are waived in light of *Matter of Yajure Hurtado*.

### B. Detention Under § 1225

Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225's mandatory detention because Petitioner is "an applicant for admission" as contemplated under § 1225, and thus, his detention is proper and his requested relief is barred. ECF No. 5 at 11-13.

The issue presented in this case has been addressed by several district courts in this Circuit and across the nation recently. This court, along with many others, have overwhelmingly held that § 1225 does not apply to detentions that occur where the petitioner is detained within the United States and has been residing in the United States for a period of time. *See Martinez Lopez*, 2025 WL 3030457, at *4-5 (explaining reasoning and citing cases); *Beltran*, 2025 WL 3078837, at *4-7 (same). The Court adopts its prior reasoning here.

Here, there is no dispute that Petitioner had been residing in United States for over four years, under the parole the United States government granted him, before he was re-detained at the Camp Pendleton base. Thus, he is properly considered detained under § 1226 rather than § 1225. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (holding § 1226 applies to petitioner who was paroled into the country on her own recognizance in June 2024 and re-detained in August 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025) (holding § 1226 applies to petitioner who was released at border on own recognizance in October 2021 and re-detained in July 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *9 (S.D.N.Y. Aug. 13, 2025) (holding § 1226 applies to petitioner who was released at border on his own recognizance in May 2023 and re-detained in July 2025).

Moreover, recently a final judgment issued in the case *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), where a district court declared unlawful under the APA this Administration's July 8, 2025 "Interim Guidance Regarding Detention Authority for Applicants for Admission" notice that required anyone arrested in the United States and being charged as inadmissible as being subject to mandatory detention under 8 U.S.C. § 1225. To the extent that Petitioner's detention was due to application of this notice, this case gives independent support for why Petitioner cannot be subject to mandatory detention in these circumstances.

Accordingly, the Court holds that 8 U.S.C. § 1225 does not apply to Petitioner's detention and Petitioner is entitled to an individualized bond hearing by an IJ, who may not deny bond on the basis that 8 U.S.C. § 1225(b) governs Petitioner's detention.

//
//
//
//

### C. Procedural Due Process/APA

In addition, Petitioner argues that his re-detention violates both the APA and procedural due process because he was not given any notice and an opportunity to be heard when his parole was revoked and he was re-detained.[1]

The parties appear to agree that Petitioner was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) on August 28, 2021. For humanitarian parole under § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain rights under both procedural due process and the APA. In *Y-Z-L-H v. Bostock*, the court found an APA violation where the government revoked the petitioner's § 1182(d)(5) parole without following the procedures laid out in 8 C.F.R. § 212.5(e). 792 F. Supp. 3d 1123, 1146 (D. Or. 2025). In *Mata Velasquez v. Kurzdorfer*, a court found a similar violation on Due Process grounds where notice and opportunity to be heard were not given to a petitioner under the same provision. 794 F. Supp. 3d 128, 145-153 (W.D.N.Y. 2025).

However, the parties do not agree on the terms of Petitioner's parole. Pursuant to 8 C.F.R. § 212.5, parole may be revoked in two ways. First, under § 212.5(e)(1), parole revocation may be automatic:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, *at the expiration of the time for which parole was authorized*, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

8 C.F.R. § 212.5(1) (emphasis added). Or, second, parole may be revoked with notice:

> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, *upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States*, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he

---

[1] Thought the Court is granting a bond hearing as stated above, Petitioner also requests release from detention and so the Court finds that it must also address this ground.

> or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

*Id.* § 212.5(1)(i) (emphasis added).

Petitioner argues that revocation of his parole must have been revoked only with written notice and with an individualized determination based on changed facts that he was now a flight risk or danger to the community or some other indication that the purpose of his humanitarian parole was no longer being served. ECF No. 1 ¶¶ 63-67, 72; ECF No. 6 at 17-19. Respondents, on the other hand, argue that Petitioner's parole was only valid for a period of four years and definitively expired on August 28, 2025. ECF No. 5 at 2. Thus, Respondents argue that the revocation was proper under the regulations. *Id.* at 11-12.

The Court finds that the evidence submitted regarding this issue is not conclusive. Neither Petitioner nor Respondents submitted a copy of the original form granting Petitioner his humanitarian parole on August 28, 2021. Petitioner suggests in his traverse that he was issued an I-94 form but does not include a copy of it in his filings. Petitioner does not allege in his Petition, however, that his original parole was issued for a four-year time period, like Respondents suggest. Conversely, Respondents' only evidence so far submitted in support of their contention that Petitioner's original parole lapsed after four years are documents dated *after* Petitioner was already re-detained. The first document is titled "Additional Charges of Inadmissibility/Deportability," dated on December 9, 2025, after Petitioner already filed his habeas petition, and states the following:

> 3. On or about August 29, 2021, you requested admission to the United States at Dulles International Airport in Dulles, Virginia;
>
> 4. On August 28, 2021, you were paroled into the United States through August 28, 2025, for the purpose of applying for immigration benefits;

5. Your parole expired on August 28, 2025;

ECF No. 5-1 at 2.[2] The second document is a Notice to Appear, dated on November 29, 2025, the day after Petitioner was re-detained, and it states that Petitioner was "admitted to the United States at Dulles, Washington D.C. on or about August 28, 2021, as a nonimmigrant asylee with authorization to remain in the United States for a temporary period set to exceed [sic] August 27, 2025" and that Petitioner "remained in the United States beyond 95 days without authorization." ECF No. 5-2.

Given this record, the Court cannot determine the actual conditions of Petitioner's original parole as they existed *before* Petitioner was re-detained on November 28, 2025. Thus, the Court **ORDERS** supplemental briefing from both parties on this issue, including providing the Court with any copies of any original I-94 form or other form that substantiates their respective positions regarding Petitioner's parole. The Court will reserve ruling on this issue pending the supplemental briefing.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1) The Court **ORDERS** Respondents to provide Petitioner with a bond determination hearing under 8 U.S.C. § 1226(a) within **ten days** of this Order. At the hearing, Respondents may not deny Petitioner bond on the basis that he is detained under 8 U.S.C. § 1225(b)(2);

(2) Respondents are **ORDERED** to File a Notice of Compliance within **five days** of providing Petitioner with a bond redetermination hearing, including apprising the Court of the results of the hearing; and

---

[2] The Court notes that the date discrepancy quoted here is present in the original document: the document states that Petitioner presented at the border on August 29, 2021, but was somehow granted parole the day before on August 28.

(3) The Court **ORDERS** the parties to file supplemental briefing regarding the issues outlined above as the original conditions of Petitioner's humanitarian parole. Such supplemental briefing must be submitted by **January 2, 2026**.

**IT IS SO ORDERED.**

Dated: December 26, 2025

Honorable James E. Simmons Jr.
United States District Judge